[No. B204191. Second Dist., Div. Three. July 9, 2008.]

SBAM PARTNERS, LLC, Plaintiff and Respondent, v.
CHENG MIIN WANG, Defendant and Appellant.

**COUNSEL**

Pick & Boydston and James C. Sun for Defendant and Appellant.

Law Offices of John Z. Shafai and John Z. Shafai for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—Plaintiff and respondent SBAM Partners, LLC (SBAM) applied for an order for the sale of defendant and appellant Cheng Miin Wang's condominium located in Los Angeles County in order to satisfy a judgment recorded in the same county. An order to show cause why the order for sale should not issue was entered, and a hearing was held. The issue presented was whether a debtor could create a homestead exemption on property acquired after a judgment had been recorded. Wang claims he was entitled to a homestead exemption on the property pursuant to Code of Civil Procedure section 704.710.[1] The trial court denied the exemption because Wang's property was purchased after SBAM recorded the abstract of judgment. We affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

On January 13, 1995, a judgment was entered against Wang in the principal sum of $128,957.07. The judgment was assigned to Bank of Seoul on or about March 24, 1995, and was then assigned to SBAM on or about November 19, 2002. An abstract of the judgment had been recorded in Los Angeles County on March 30, 1995. On November 17, 1997, Wang purchased the condominium in question, located in Los Angeles County; he has resided there continuously since the date of purchase. The parties do not suggest that the condominium was purchased with the proceeds from the sale of a prior homestead, and there is no evidence in the record to that effect. SBAM renewed the judgment[2] on January 6, 2005, in the amount of $257,788.09, and recorded the renewal in Los Angeles County on January 13, 2005.[3]

On February 6, 2006, SBAM applied for an order for the sale of Wang's condominium to enforce the judgment. On February 7, 2006, the court entered an order to show cause why an order for sale of dwelling should not issue. On July 17, 2007, there was a hearing pursuant to this order. Wang argued that the condominium was entitled to a homestead exemption because

---

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

[2] Section 683.020 provides that a money judgment is unenforceable after 10 years from the date of entry. Section 683.120, however, provides that a judgment creditor may renew a judgment by filing an application for renewal, extending the period of enforceability for 10 years from the date the application is filed.

[3] Wang filed a chapter 7 petition in the United States Bankruptcy Court and obtained a discharge in bankruptcy on January 26, 2004. Wang reopened the bankruptcy case to file a motion to avoid SBAM's judgment lien, which was denied on November 13, 2006. Both parties have properly noted that under these circumstances, the holding of the bankruptcy court on the issue of the homestead exemption is not binding. (*Thomas v. Speck* (1941) 47 Cal.App.2d 512, 518–519 [118 P.2d 365].)

attachment of the lien did not occur until the date of purchase, at which time the condominium was already a homestead. SBAM responded that a homestead exemption cannot be created for property acquired after creation of the lien. The trial court denied the homestead exemption, and an order for the sale of the condominium was entered on September 19, 2007. Wang has filed a timely notice of appeal.

## ISSUE ON APPEAL

The issue on appeal is whether Wang is entitled to a homestead exemption for his condominium, which was acquired after SBAM's judgment lien was recorded, pursuant to section 704.710, subdivision (c).

## DISCUSSION

### 1. Standard of Review

Whether Wang is entitled to a homestead exemption for property acquired after SBAM's judgment lien had been recorded depends on the interpretation of section 704.710, subdivision (c). " 'The construction and interpretation of a statute are . . . question[s] of law, which the Court of Appeal considers de novo. [Citation.]' [Citation.]" (*Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 223 [101 Cal.Rptr.2d 883].)

### 2. Homestead Exemption

■ Section 697.310, subdivision (a) allows a creditor to obtain a judgment lien on real property owned by the debtor in the county where the abstract of judgment is recorded. The lien attaches to such property at the time the lien is created. (§ 697.340, subd. (a).) "If any interest in real property in the county on which a judgment lien could be created under subdivision (a) is acquired *after* the judgment lien was created, the judgment lien attaches to such interest at the time it is acquired." (*Id.*, subd. (b), italics added.) ■ If the debtor's home is sold in order to satisfy the judgment, the debtor may be eligible for a homestead exemption of up to $150,000 on the proceeds from the sale.[4] (§ 704.730.)

■ Section 704.710, subdivision (a) defines "dwelling" as "a place where a person resides." Section 704.710, subdivision (c) provides that " '[h]omestead' means the principal dwelling (1) in which the judgment debtor or the

---

[4] There is no requirement of recordation in section 704.710 in order to receive a homestead exemption. A homeowner is entitled to an automatic homestead exemption as long as the requirements of section 704.710, subdivision (c) are met. However, a homeowner also has the option of obtaining a homestead exemption by recording a "homestead declaration" pursuant to section 704.910 et seq.

judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead. Where exempt proceeds from the sale or damage or destruction of a homestead are used toward the acquisition of a dwelling within the six-month period provided by Section 704.720,[5] 'homestead' also means the dwelling so acquired if it is the principal dwelling in which the judgment debtor or the judgment debtor's spouse resided continuously from the date of acquisition until the date of the court determination that the dwelling is a homestead, whether or not an abstract or certified copy of a judgment was recorded to create a judgment lien before the dwelling was acquired."

█ In sum, the homestead character of the property is determined as of the date of attachment of the judgment lien. For already owned property, attachment occurs at the time the lien is created. For after-acquired property, attachment occurs on the date of purchase. The proceeds from a *voluntary* sale of an already exempted homestead are exempt for six months. If the exempt proceeds are used to purchase a dwelling within that six-month period, such dwelling may also qualify for a homestead exemption, even if a judgment lien has already been recorded. In this case, Wang's condominium was purchased with nonexempt proceeds after SBAM recorded the judgment. Therefore, attachment of the judgment lien and the (possible) creation of the homestead occurred simultaneously—at the time of purchase. Whether the judgment lien is subject to a homestead exemption in such a case is an issue of first impression in California.

The Legislative Committee comment to section 704.710 states, in part, that "[s]ubdivision (c) is intended to preclude a judgment debtor from moving into a dwelling after creation of a judgment lien or after levy in order to create an exemption." (Legis. Com. com., Deering's Ann. Code Civ. Proc. (1998 ed) foll. § 704.710, p. 451.) The use of the word "creation" instead of "attachment" produces some ambiguity in ascertaining the legislative intent. SBAM argues that the lien was "created" on March 30, 1995, when the judgment was recorded, in which case Wang clearly would not be entitled to a homestead exemption on the condominium subsequently purchased in November 1997. Wang claims that the lien on his condominium was not "created" until it actually attached, which according to section 697.340, subdivision (b), was the date of purchase on November 17, 1997. Since he

---

[5] Section 704.720, subdivision (b) provides that if a homestead is sold, damaged, destroyed, or is acquired for public use, the proceeds of sale or compensation are exempt for six months unless a homestead exemption is applied to other property during that period.

lived in the condominium on the date of purchase, the homestead and the lien attached at the same time, and Wang argues that the homestead has priority over the lien.[6]

██ " 'Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters). [Citations.] [¶] But the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citation.]" (*Gonzalez v. Toews* (2003) 111 Cal.App.4th 977, 981 [4 Cal.Rptr.3d 434].)  ██  "Statements in legislative committee reports which are in accordance with a reasonable interpretation of a statute will be followed by courts to assist in interpretation of legislative intent. [Citation.]" (*Wolfe v. Lipsy* (1985) 163 Cal.App.3d 633, 642, fn. 2 [209 Cal.Rptr. 801].)

"In 1982, the Legislature enacted Assembly Bill No. 707, known as the 'Enforcement of Judgments Law,' which is a comprehensive statutory scheme for the enforcement of civil judgments in California, including the role of homestead and residential exemptions. [Citation.]" (*Wolfe v. Lipsy, supra*, 163 Cal.App.3d at p. 641.) As introduced on March 2, 1981, Assembly Bill No. 707 (1981–1982 Reg. Sess.) (Assembly Bill 707) provided that section 704.710, subdivision (c) would read (in pertinent part), " '[h]omestead' means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse actually resided on the date the judgment creditor's lien attached to the dwelling *or which, after the date a judgment lien was created by the recording of an abstract or certified copy of the judgment, was acquired with the intent that the judgment debtor or the judgment debtor's spouse actually reside therein as his or her principal dwelling*, and (2) in

---

[6] Wang's argument depends on the fact that he took possession the day the deed was recorded.

which the judgment debtor or the judgment debtor's spouse actually resided continuously thereafter until the date of the court determination that the dwelling is a homestead." (Assem. Bill 707, as introduced Mar. 2, 1981, p. 124, italics added.) The italicized language directly addressed Wang's situation. This version of the statute clearly aimed to provide a homestead exemption for property acquired by a debtor with the intent to make it his or her principal dwelling after the lien was recorded.

The California Law Revision Commission's October 1980 Tentative Recommendation Proposing the Enforcement of Judgments Law, which includes the language quoted above, provides a comment to section 704.710, stating in part: ". . . Subdivision (c) also makes clear that, even though an abstract of judgment has been recorded to create a judgment lien, the existence of such lien does not prevent a homestead exemption on after-acquired property which is acquired as the principal dwelling." (Tentative Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980) pp. 2414–2415.) This comment confirms that the original bill was meant to provide a homestead exemption on any after-acquired property purchased with the intent to make it a dwelling.

However, Assembly Bill 707 was amended on January 19, 1982, to modify subdivision (c) of section 704.710 to provide that " '[h]omestead' means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse actually resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse actually resided continuously thereafter until the date of the court determination that the dwelling is a homestead." (Assem. Bill 707, as amended Jan. 19, 1982, p. 121.) This amendment specifically *deleted* the provision from section 704.710 allowing an exemption on after-acquired property purchased with the intent to make it the principal dwelling. The deletion of this critical provision indicates that the Legislature clearly intended to preclude after-acquired property from a homestead exemption. At this time, the proposed statute also provided that proceeds from the sale of a homestead would be exempt for a six-month "safe harbor" period. (Assem. Bill 707, as amended Jan. 19, 1982, p. 122.) However, if the debtor reinvested such proceeds in another home, that home would not be entitled to a homestead exemption and therefore would not be protected against previously recorded judgment liens.

A report prepared by the California Law Revision Commission specifically addressed the deletion of the after-acquired property exemption provision in the January 19, 1982 amendment to Assembly Bill 707. In a section titled "After-acquired dwelling not exempt," the report states: "While in the Assembly, a provision was deleted which would have allowed a dwelling

exemption where, after a judgment lien was recorded, the debtor acquired a dwelling with the intent that it would be his principle residence. [¶] The Western Center on Law and Poverty believes that the provision should be re-inserted, stating that the bill would otherwise fail to protect the exempted proceeds from the sale of a former homestead. Under AB 707 such proceeds would be exempt from execution for six months in order to provide the debtor an opportunity to purchase a new home. [¶] Notwithstanding, the judgment debtor with exempted proceeds from the sale of a former dwelling would face a precarious choice. On the one hand, if he reinvested the proceeds in a new dwelling, it would not be eligible for a dwelling exemption, and would be subject to levy and execution if there was a prior recorded lien on file. On the other hand, if he did not reinvest the proceeds within six months, the proceeds would become subject to levy and execution." (Cal. Law Revision Com., analysis of Assem. Bill No. 707 (1981–1982 Reg. Sess.) as amended Feb. 25, 1982, prepared for the Sen. Com. on Judiciary (Mar. 2, 1982) p. 9.) This report indicates that the Legislature omitted after-acquired dwellings from the exemption, which raised concerns about the protection of proceeds from the sale of a debtor's former homestead.

Assembly Bill 707 was again amended on April 19, 1982, so that subdivision (c) of section 704.710 would provide that "[h]omestead means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse actually resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse actually resided continuously thereafter until the date of the court determination that the dwelling is a homestead. *Where exempt proceeds from the sale or damage or destruction of a homestead are used toward the acquisition of a dwelling within the six-month period provided by section 704.720, 'homestead' also means the dwelling so acquired if it is the principal dwelling in which the judgment debtor or the judgment debtor's spouse actually resided continuously from the date of acquisition until the date of the court determination that the dwelling is a homestead, whether or not an abstract or certified copy of a judgment was recorded to create a judgment lien before the dwelling was acquired.*" (Assem. Bill 707, as amended Apr. 19, 1982, pp. 122–123.) This amendment added the italicized provision, resolving the concern raised in the California Law Revision Commission's report by allowing debtors a homestead exemption on an after-acquired dwelling purchased with exempt proceeds despite a prior recorded judgment. This became the final version as passed by the Legislature and signed by the Governor.

The Legislative Committee comment to the enacted provisions in section 704.710 states, in part, that "[s]ubdivision (c) also makes clear that, even though an abstract of judgment has been recorded to create a judgment lien, the existence of such lien does not prevent a homestead exemption on

after-acquired property which is acquired as the principal dwelling *using exempt proceeds*." (Legis. Com. com., Deering's Ann. Code Civ. Proc., *supra*, foll. § 704.710, p. 451, italics added.) It is noteworthy that the current Legislative Committee comment is identical to the comment in the initial tentative recommendation *except* for the addition of the words "using exempt proceeds" after "principal dwelling." This confirms that the Legislature intended to narrow the protection of the homestead exemption for after-acquired property to protect only such after-acquired property *as was purchased with exempt proceeds*.

The legislative history establishes that while there is no general homestead exemption for an after-acquired dwelling, the debtor still has the benefit of the six-month "safe harbor" exempting the proceeds from the sale of his former homestead, which can be used to acquire a new homestead. Moreover, if section 704.710 were interpreted to provide an exemption for *any* after-acquired dwelling whether or not it was acquired with exempt proceeds, there would be no need for the provision specifically allowing a homestead exemption on an after-acquired dwelling purchased with exempt proceeds.

■ Only a handful of courts in other jurisdictions have reached the same or similar issue. In each of those cases, however, the court held that the homestead exemption had priority over the judgment lien. (See *Bowers v. Mozingo* (Fla.Dist.Ct.App. 1981) 399 So.2d 492; *Herndon v. Grilz* (1996) 112 Nev. 873 [920 P.2d 998]; *Maples v. Rawlins* (1900) 105 Tenn. 457 [58 S.W. 644]; *Northern State Bank v. Toal* (1975) 69 Wis.2d 50 [230 N.W.2d 153]; *Stowell v. Kerr* (1905) 72 Kan. 330 [83 P. 827]; *Wallis, Landes & Co. v. Wendler* (1901) 27 Tex.Civ.App. 235 [65 S.W. 43].) Wang cites some of these decisions in support of his argument, and also makes a policy argument that the homestead statutes are to be liberally construed in favor of the debtor. "It is true that it is the policy of the law to favor homesteads to a certain extent, for the protection and preservation of homes and families. But there is a limit beyond which this policy should not be allowed to control. It should not be invoked for the purpose of establishing a new application and interpretation of a statute, contrary to its true meaning and in the face of a long-established understanding and usage based on its true meaning." (*Weber v. McCleverty* (1906) 149 Cal. 316, 319 [86 P. 706].) "Moreover, and particularly where the legislative purpose is otherwise apparent, ' "criticisms of policy, wisdom or technique inherent in any legislative enactment 'are matters with which the courts have no concern, such arguments being proper ones to address to the [L]egislature for its determination.' " ' [Citation.]" (*Horwath v. Local Agency Formation Com.* (1983) 143 Cal.App.3d 177, 182 [191 Cal.Rptr. 593].)

■ In sum, the legislative history of section 704.710 clearly indicates that it does *not* allow a homestead exemption on property acquired by the debtor

after the judgment has been recorded *unless it was purchased with exempt proceeds from the sale, damage or destruction of a homestead within the six-month safe harbor period.* ▆ Since there is no evidence that Wang's condominium was purchased with such proceeds, he is not entitled to a homestead exemption. The trial court did not err in denying Wang's claim for such exemption.

## *DISPOSITION*

The judgment is affirmed. SBAM shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.